1

2                       **UNITED STATES DISTRICT COURT**

3                            **DISTRICT OF NEVADA**

4                                    * * *

5   UNITED STATES OF AMERICA,                    )
                                                 )
6                     Plaintiff,                 )
                                                 )        2:12-cr-00463-JCM-VCF-1
7   vs.                                          )
                                                 )        ORDER & REPORT AND
8                                                )        RECOMMENDATION
                                                 )
9   FREDERICK VERNON WILLIAMS,                   )        (Motion for Severance of Counts and
                                                 )         Defendants (#89) and Motion to Suppress
10                                               )         (#92))
                                                 )
11                    Defendant.                 )
                                                 )
12  _____    )

13                           **REPORT & RECOMMENDATION**

14          Before the court is defendant Frederick Vernon Williams' Motion for Severance of Counts and

15  Defendants. (#89). The government filed an Opposition (#97), and defendant did not file a Reply.

16          Also before the court is defendant Williams' Motion to Suppress Search Warrant. (#92). The

17  government filed an Opposition (#101), and defendant did not file a Reply.

18          The court held a hearing on September 3, 2013.

19          Defendant Williams is awaiting trial on charges of false citizenship, 18 U.S.C. § 911, false

20  statement in application for passport, 18 U.S.C. § 1542, aggravated identity theft, 18 U.S.C. §

21  1028A(a)(1), conspiracy, 18 U.S.C. § 1349, and mail fraud, 18 U.S.C. § 1341. (#47).  Defendant

22  alleges that the superseding indictment against him (#47) arises from a confidential informant ("CW")

23  providing information to the authorities that he obtained his passport through fraud and that he had been

24  involved in unemployment compensation fraud. (#92).  Special Agent Roland II obtained a search

25  warrant to search defendant's home at 2637 Soledad Way for evidence of the crimes. *Id.*  Defendant

26  contests whether there was probable cause to believe that evidence of a crime would be found at the

1    residence.  *Id.*  Defendant also asks this court to sever the counts against him and to sever the trials of

2    he and co-defendant Jacqueline Gentle.  (#89).

3                                          **BACKGROUND**

4           On December 11, 2012, Agent Roland of the United States Diplomatic Security Service applied

5    for a search warrant of the premises known as 2637 Soledad Way, N. Las Vegas, Nevada 89030, and

6    two automobiles[1].  (#92-1).  The Honorable Judge George Foley, Jr. approved the search warrant on

7    the same day.  *Id.*  The application/affidavit for search warranted stated that a cooperating witness

8    ("CW") provided information to Agent Roland relating to defendant Williams and his co-defendants,

9    and that "[t]he substantive information the CW provided to me has been independently corroborated

10   by various investigative methods and the CW has proved to be reliable."  *Id.*

11          The search warrant application/affidavit identifies defendant Williams as "Subject 1," and states

12   that defendant Williams is alleged to have fraudulently obtained a U.S. passport using a computer and

13   finding a man who is a U.S. citizen with the same name as his fathers.  *Id.*  The application/affidavit

14   also states that defendant Williams is potentially involved with an unemployment compensation fraud,

15   and provides the background of the investigation into such allegations.  *Id.*  The application/affidavit

16   also discusses co-defendants Jacqueline Gentle and Deon Devon Gentle, and the allegations of fraud

17   against them.  *Id.*

18          The application/affidavit states that the CW informed the agent that defendant Williams rented

19   a single family house located at 3132 Congress Ave, and that on September 18, 2012, agents conducted

20   surveillance of the residence and "observed several vehicles parked at the residence including a white

21   1999 Pontiac Door sedan bearing Nevada license plates 897-WTN and a black 1995 Toyota Door sedan

22   bearing Nevada license plate 454-XKW," one being registered to defendant Williams' brother and the

23   other registered to defendant Williams.  *Id.*  The application/affidavit also states that "[a]gents

24   conducted Choice Point Consolidated Lead Evaluation and Reporting CP Clear query for 3123

25

26          [1]The court notes that defendant Williams does not seek suppression of any evidence seized from the
     automobiles in his motion (#92).

                                                    2

1    Congress Aye Las Vegas NV," and that "[t]he query returned list of reported residents including

2    [defendant Williams]." *Id.*  According to the application/affidavit, "Transibsion New Movers Detail

3    and household Listing listed [defendant Williams] as resident of the property." *Id.*   Defendant's car

4    was seen outside the property on November 13, 2012. *Id.*

5         The application/affidavit states that on "December 6, 2012, [t]he CW informed me that

6    [defendant Williams] abandoned 3123 Congress Ave N. Las Vegas, Nevada and moved to 2637

7    Soledad Way Las Vegas NV 89030 (PREMISES)," and that "[o]n December 6, 2012 at 500 p.m I

8    observed three vehicles parked at the PREMISES; a green Chevy Suburban with Nevada license plate

9    683-YBL; a white mini-van with no license plate, and a black BMW sedan with no license plate." *Id.*

10   A records check revealed that the license plate 683-YBL is registered to defendant Williams. *Id.* The

11   application/affidavit further states that "[o]n December 7, 2012, at 3:40 a.m., I observed the above three

12   vehicles at the PREMISES and the black Toyota Camry with license plate 454-XKB registered to

13   [defendant Williams]," and that "[o]n December 7, 2012, at 3:30 p.m I again observed the green Chevy

14   Suburban registered to [defendant Williams] in the yard." *Id.*

15        The application/affidavit provides that "[i]n your Affiants training and experience in criminal

16   investigations related to fraudulent identification documents your affiant knows that individuals that

17   obtain produce sell transfer and manufacture identity and travel documents including documents used

18   to procure passports visas alien registration and other documents prescribed by statute for entry into the

19   U.S often use such documents to conceal further fraudulent activity and tend to retain and secure such

20   items at their residences businesses or vehicles to keep them close at hand." *Id.* The

21   application/affidavit states that "[b]ecause the aforementioned items and instrumentalities are not in and

22   of themselves incriminating, persons involved in this type of activity often retain the items in their

23   residences businesses and vehicles for future reference and use in the event they have need to again

24   secure produce manufacture or transfer fraudulent documents." *Id.*

25        The application/affidavit also provides Attachments A-1, A-2, and A-3, which are descriptions

26   of the premises to be searched, and Attachment B, which is a description of the property to be seized

3

1  from the premises. *Id.*   The introduction of Attachment B states that property to be seized includes

2  "[e]vidence of the fruits and instrumentalities of violations of 18 U.S.C §371 Conspiracy to Defraud

3  the United States; 18 U.S.C § 911-False Claim to U.S Citizenship; 18 U.S.C §1028A - Aggravated

4  Identity Theft; 18 U.S.C § 1341- Mail Fraud; 18 U.S.C § 1343-Wire Fraud; 18 U.S.C § 1542-

5  Passport Fraud; and 18 U.S.C § 1546- Visa Fraud, those violations involving Frederick Williams,

6  Jacqucline Gentle, Prudence Uter Swift, Deon Gentle, and Denise Leslie Williams..." *Id.*   The

7  Attachment then provides a list of such items, including letters, passports, government stamps and seals,

8  telephone records, mail, Social Security Administration documents, travel records, etc. *Id.*

9        On December 12, 2012, Agent Roland, along with other agents, executed the search warrant of

10  2637 Soledad Way, N. Las Vegas, Nevada 89030, and arrested defendant Williams and Deon Gentle.

11  (#92).  Subsequently, officers arrested co-defendant Jacqueline Gentle. *Id.*   Defendant Williams was

12  interviewed and made the following statements:

13        • That he helped Jacqueline and Deon gentle apply for US passports; that Williams informed

14  them that the person he was claiming to be their father was not their true biological father but that they

15  chose to go though with he application anyway.

16        • That he traveled with Jacqueline and Deon Gentle to California to assist them with their

17  passport applications.

18        • That Williams created a fraudulent "acknowledgment of parentage and citizenship" allegedly

19  signed by Anthony Todd Gentle.

20        • That he filed fraudulent unemployment claims in each person's name without their knowledge.

21  (#89).  Defendant Jacqueline Gentle was interviewed as well, and made the following statements:

22        • Williams prepared her passport applications and she was not aware of who he listed as her

23  father.

24        • That someone other than her had been receiving unemployment benefits up until 2011.

25  *Id.*

26        Defendant Williams filed a motion to sever counts and defendants (#89), and a motion to

4

1  suppress search warrant (#92) on June 24, 2013.  The government filed oppositions (#97) and (#101).

2  Defendant did not file a reply.  The court held a hearing on September 3, 2013.

3                                                            **DISCUSSION**

4  **Motion To Suppress (#92):**

5       In the present motion to suppress, defendant Williams asks this court to suppress the evidence

6  found as a result of the search warrant (#92-1), and alleges that the application/affidavit for the search

7  warrant was insufficient to establish probable cause.  (#92).

8       **A.     Standing**

9       The government argues that defendant has not established that he has standing to seek

10  suppression of the evidence seized as a result of the search warrant (#92-1).  (#101).  During the

11  hearing, defendant argued that he was, at the least, an overnight guest with an expectation of privacy

12  in the residence searched, as evidenced by the fact that he was sleeping at the home when the warrant

13  was executed and he was arrested.

14       Relying on the court's ruling in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d

15  576 (1967), the court in *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978)

16  held that the "capacity to claim the protection of the Fourth Amendment depends ... upon whether the

17  person who claims the protection of the Amendment has a legitimate expectation of privacy in the

18  invaded place."   A subjective expectation of privacy is legitimate if it is "one that society is prepared

19  to recognize as reasonable..." *Rakas*, 439 U.S. at 143 (quoting *Katz,* 389 U.S. at 361).

20       The court finds that, as an over night guest, defendant Williams had a legitimate expectation of

21  privacy in the residence searched, and that he has standing to allege a Fourth Amendment violation

22  relating to the search conducted pursuant to the search warrant (#92-1).  *See Minnesota v. Olson*, 495

23  U.S. 91, 100, 110 S. Ct. 1684, 1690, 109 L. Ed. 2d 85 (1990) (holding that an overnight guest's

24  "expectation of privacy in the...home was rooted in "understandings that are recognized and permitted

25  by society," *Rakas, supra*, at 144, n. 12, 99 S.Ct., at 431, n. 12, it was legitimate, and respondent can

26  claim the protection of the Fourth Amendment.").

B.      **Probable Cause**

1.      **Arguments**

Defendant contends that "[i]n this case, the affidavit in support of the search warrant is insufficient because under the "totality of the circumstances" test announced in *Gates*, the search warrant is premised on an affidavit which has failed to set forth sufficient facts to justify the belief that the place to be searched contained items connected with criminal activity." *Id.*[2]  The defendant argues that "Special Agent Roland II set forth facts indicating that he had knowledge that Williams had been involved in prior crimes; however his affidavit is insufficient to establish that specific objects connected to those particular crimes would be located at 2637 Soledad Way on December 2012." *Id.*

Defendant argues that "[i]n stark contrast to the investigation that was conducted to confirm that Williams actually resided at Congress Avenue, very little was done with regards to Soledad Way. There was no CP Clear query to see who resided there and nothing was done to determine whose name the utilities were under." *Id.*  Defendant argues that "[t]he fact that cars registered to Williams were at that location on two particular occasions does not give rise to probable cause to believe that he resides there." *Id.*  Defendant asks this court to suppress evidence obtained as a result of an illegal search conducted on Williams' home because the affidavit fails to establish the requisite probable cause to justify the issuance of a search warrant." *Id.*

The government asks this court to deny the motion to suppress (#92), and states that "[b]ased on information obtained from the CW and a review of government and financial records constituting probable cause that the defendants were engaged in fraudulent criminal activity, the Government applied for search warrants for 2637 Soledad Way, North Las Vegas, NV 89030, believed to be Frederick Williams' residence, and two vehicles registered to Williams' that were parked at this premises." (#101).  The government asserts that it originally focused on another address, but that the agents later focused on Soledad Way "based on new information from the CW and multiple sightings

---

[2]*See United States v. Buchanan,* 167 F.3d 1207, 1211 (8th Cir. 1999) ("Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that the contraband will be found in a particular place").

1 of Defendant Williams' cars at Soledad Way by surveillance teams." *Id.*

2 The government contends that "[t]he warrant contained probable cause to connect Williams'

3 criminal activity to the 2637 Soledad Way residence, given the relatively low standard of proof

4 established in *Gates*." *Id.* The government states that Gates "involved a largely uncorroborated letter

5 from an anonymous informant; here, the affidavit for the warrant at issue, with attachments, was

6 twenty-eight pages long and provided significant investigative detail tying Williams and the other

7 defendants to various fraudulent acts through the CW's information and numerous records obtained by

8 the agents." *Id.* The government then walks the court through the affidavit and the observations of the

9 officers contained therein. *Id.*

10 **2.** **Relevant Law/Discussion**

11 When issuing a search warrant, the Magistrate Judge is only required "to answer the

12 commonsense, practical question whether there is probable cause to believe that contraband or evidence

13 is located in a particular place." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir.

14 2006)(quotations omitted). This court must pay "great deference" to the probable cause determination

15 made by the Magistrate Judge issuing the search warrant. *Gates*, 462 U.S. at 236. Magistrate Judges

16 are entitled to draw "reasonable inferences about where evidence is likely to be kept," and it is not

17 required that the affidavit contain direct evidence that items are at a particular location to establish

18 probable cause regarding that location. *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986)

19 (citing *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985)).

20 Defendant Williams argues that the search warrant lacks probable cause that the "specific

21 objects connected to those particular crimes would be located at 2637 Soledad Way on December

22 2012," and that "very little was done with regards to Soledad Way" to prove that defendant Williams

23 was residing at 2637 Soledad Way. (#92). Upon a review of the application/affidavit, the court finds

24 that the it contains probable cause to believe that evidence of the alleged crimes would be found at 2637

25 Soledad Way, as (1) the agents were working with a CW who was close to the defendant, (2) the

26 information provided by the CW regarding the allegations and defendant's prior residence was reliable,

7

1   (3) the CW had informed the agents that defendant Williams had moved to 2637 Soledad Way, (4)

2   surveillance was conducted of the residence, and (5) cars registered to defendant were seen outside the

3   residence for a twenty-four (24) hour period and at 3:00 a.m.  (#92-1).  The court recognizes that there

4   was more time spent observing  the defendant's previous address, but gives great weight to the fact that

5   the reliable CW informed the agents that the defendant had moved to 2637 Soledad Way and that the

6   defendant's cars were observed in front of that residence.   The Magistrate Judge properly found that

7   probable cause existed to believe that evidence of the crimes alleged against defendant Williams would

8   be found at 2637 Soledad Way.   *See Gourde*, 440 F.3d at 1069.   The motion to suppress the search

9   warrant (#92) should be denied.

10   **Motion to Sever (#89):**

11          **A.      Sever Claims**

12             **1.          Arguments**

13          Defendant Williams asks this court to sever the counts in this case, as (a) "the offenses charged

14   seem to [be] divide[d] into two groups: (1) immigration-related fraud and (2) unemployment fraud,"

15   (b) "[t]hese two groups of offenses are not similar in character nor are they based on the same act or

16   transaction," (c) "[t]he Government will be introducing evidence at trial which tends to support the

17   notion that Williams was involved in fraudulent conduct as to both groups of offenses," and (d) "[i]t

18   is logical to assume that the jury will likely find Williams more likely to have committed the

19   unemployment fraud after hearing evidence regarding the immigration-related fraud."  (#89).

20          The government argues that "the superseding indictment filed on April 16, 2013 illustrated four

21   separate events that gave rise to the charges against Frederick Williams:"

22         • September 2004: Williams falsely claims E.L.W., a U.S. citizen, is his father in an application

23   for a United States passport.

24         • January 2008 – March 2009: Williams falsely claims to be a citizen on an Immigration Petition

25   for an Alien Fiancé, again using the false parentage of E.L.W.

26         • April 2009: Williams falsely claims to be a U.S. citizen when applying to be a Notary Case

1  Public in the state of Nevada.

2      • August 2010 – June 2012: Williams, while fraudulently obtaining unemployment

3  compensation benefits, submits fake wage records and personal information of the "employees" of the

4  fake companies he created, including a fraudulent employee record in his own name.

5  (#97).

6      The government argues that these four events and the resulting charges are sufficiently

7  connected and that joinder is proper. *Id.*  The government asserts that (1) the offenses are of

8  sufficiently similar character to satisfy the first condition of Rule 8(a), (2) "the indictment further covers

9  a "common scheme or plan" of Defendant Williams that makes joinder of the charges appropriate in

10  this case," and (3) defendant has failed to show sufficient prejudice as required by Rule 14(a) and

11  "failed to demonstrate any prejudice resulting from the joinder besides the bare assertion that evidence

12  regarding the immigration charges will influence the jury's decision on the charges related to the

13  unemployment compensation fraud scheme." *Id.*

14          **2.      Relevant Law/Discussion**

15      Federal Rule of Criminal Procedure 8(a) provides that "[t]he indictment or information may

16  charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies

17  or misdemeanors or both--are [1] of the same or similar character, or [2] are based on the same act or

18  transaction, or [3] are connected with or constitute parts of a common scheme or plan."  In determining

19  the existence of a common scheme, courts look at whether the "[c]ommission of one of the offenses [

20  ]either depended upon [ ]or necessarily led to the commission of the other; proof of the one act [ ]either

21  constituted [ ]or depended upon proof of the other." *United States v. Jawara*, 474 F.3d 565, 574 (9th

22  Cir. 2007)(quoting *United States v. Halper*, 590 F.2d 422, 429 (2d Cir.1978); *see also United States v.*

23  *Anderson*, 642 F.2d 281, 284 (9th Cir.1981) ("When the joined counts are logically related, and there

24  is a large area of overlapping proof, joinder is appropriate.") (citing *United States v. Roselli*, 432 F.2d

25  879, 899 (9th Cir.1970)).  "[T]he established rule in this circuit is that a valid basis for joinder should

26  be discernible from the face of the indictment...," and since "Rule 14 is available "as a remedy for

1  prejudice that may develop during the trial," Rule 8 has been "broadly construed in favor of initial

2  joinder...." *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.1971)."  *Id* at 573.

3  The court finds the severing the counts against defendant Williams is not warranted.  The

4  superseding indictment (#47) alleges that defendant Williams (Count 1) submitted a false application

5  for a passport by representing that an individual was his father when he knew this to be false, (Count

6  2) represented himself as a U.S. citizen in an Immigration Petition for Alien Fiancé, (Count 3)

7  possessed and used the identification of another person in relation to a false citizenship claim, (count

8  8) falsely and willfully represented himself as a citizen of the United States in a Nevada Secretary of

9  State, Application for Appointment as a Notary Public, (count 9) conspired with others to commit mail

10  fraud by way of submitting fraudulent Nevada Business Registrations for companies, fraudulent wage

11  records for non-existent employees, and fraudulent claims for UI benefits, and receiving and using UI

12  benefit debit cards, and (counts 10-23) committed mail fraud by executing the conspiracy in count 9.

13

14  It is clear from the face of the indictment (#47) that the alleged wrongdoings resulting in the

15  "unemployment fraud" related counts were possible because defendant Williams had submitted his false

16  application for a passport, was residing in the United States under this false pretense, and had false

17  documentation stating that he was a citizen.   The court finds that the "[c]ommission of one of the

18  offenses [ ]either depended upon [ ] or necessarily led to the commission of the other;" and that joinder

19  is appropriate.  *Jawara*, 474 F.3d  at 574.   Each of the allegations against defendant Williams

20  "constitute parts of a common scheme or plan" with the other defendants to fraudulently become U.S.

21  citizens, fraudulently register companies, and obtain money by way of unemployment fraud. *See* Fed.

22  R. Civ. P. 8(a).  The motion to sever claims (#89) is denied.

23  **B.    Sever Defendants**

24  **1.    Arguments**

25  Defendant Williams contends that severance of the defendants for trial is warranted, as (1) "[i]f

26  the government calls the agents involved to testify about Gentle's statements that incriminate Williams,

1   Williams cannot exercise his right to cross-examine the declarant of those statements, because Gentle

2   has a right to remain silent pursuant to the Fifth Amendment. *See Bruton,* 391 U.S. at 126, 127-28," (2)

3   "there is simply no way to redact Gentle's statements to eliminate the references to Williams. Gentle

4   made clear that Williams helped with the application ans that she did not know who Williams used as

5   her father in the passport application," (3) they have antagonistic and mutually exclusive defenses, and

6   the "[a]s the Ninth Circuit stressed, "[t]he most common reason for severing a trial is where co-

7   defendants present mutually exclusive or irreconcilable defenses." *United States v. Vasquez- Velasco*,

8   15 F.3d 833, 846 (9th Cir. 1994)," and (4) "[i]t is clear from Gentle's statements that she is blaming

9   Williams for the bulk of the conduct that gave rise to the allegations herein[;] Gentle stated that

10  Williams helped her with the passport application and that she did not know that Williams had used

11  someone other than her father to obtain the passport. Likewise, she also stated that someone other than

12  herself had been receiving the unemployment claims despite the fact that she worked for Luna." (#89).

13         The government agrees to redact any mention of Williams in Gentle's statement, as to eliminate

14  any issue under *Bruton.* (#98).  If this does not suffice, the government recommends "dual juries" to

15  eliminate the *Bruton* issue, and argues that"[t]he Ninth Circuit, sitting en banc, has accepted the use of

16  dual juries under similar circumstances to address Bruton problems. *Lambert v. Stewart*, 191 F.3d 1181,

17  1185 (9th Cir. 1999) ("[W]e now know that dual juries are in wide use and that they have worked out

18  just fine.")." *Id.*  The government also proposes to " not use Gentle's statements in its case-in-chief in

19  the interest of maintaining joinder. Of course, the Government would reserve the right to introduce the

20  statement and use as appropriate under the Rules of Evidence if Defendant Gentle chose to testify at

21  trial." *Id.*

22                    **2.    Relevant Law/Discussion**

23         Rule 8(b) of the Federal Rules of Criminal Procedure provides that "[t]he indictment or

24  information may charge 2 or more defendants if they are alleged to have participated in the same act

25  or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  In the

26  federal system there is a preference for joint trials of defendants who are indicted together. *Richardson*

11

1  *v. Marsh*, 481 U.S. 200, 209 (1987).  Even when proper under Rule 8(b), however, joinder may be

2  prejudicial.  Rule 14(a) provides that if the joinder of defendants "appears to prejudice a defendant or

3  the government, the court may order separate trials of counts, sever the defendants' trials, or provide

4  any other relief that justice requires."  Fed. R. Crim. P. 14(a).  "[W]hen defendants properly have been

5  joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious

6  risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury

7  from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539

8  (1993).

9       Defendant Williams argues that the joint trial would result in a *Bruton* violation, and that

10  severing the trials is appropriate. (#89).  The government asks this court to permit redaction of Gentle's

11  statement as a means to cure any possible *Bruton* violation.  (#98).  During the hearing on the motion

12  to sever (#89), the parties agreed to meet and confer within one week of the hearing to agree upon a

13  proper redaction of Gentle's statement.

14                                    **a.    *Bruton* Violation**

15       In *Bruton v United States,* 391 U.S. 123 (1968), co-defendants Bruton and Evans were jointly

16  tried for armed postal robbery.  During the trial, the government called to the stand a postal inspector

17  who testified that Evans had confessed to the robbery. *Id* at 124.  In his confession, Evans admitted that

18  he committed the crime with his accomplice, Bruton. *Id.*  However, as Evans did not take the stand,

19  Bruton was unable to cross-examine him regarding his alleged involvement. *Id.*  At the close of the

20  government's case, the court gave "clear, concise and understandable" instructions that Evans'

21  confession could only be used against him, and must be disregarded with respect to Bruton. *Id.*  The

22  jury found both of the defendants guilty of federal armed postal robbery. *Id.*  Bruton appealed his

23  conviction, asserting that the instructions did not sufficiently protect his constitutional right to a fair

24  trial. *Id.*

25       On appeal, the court reversed Bruton's conviction, and held that "because of the substantial risk

26  that the jury, despite instruction to the contrary, looked to the incriminating extrajudicial statements in

1  determining [Bruton]'s guilt, admissions of Evans' confession in this joint trial violated [Bruton]'s right

2  of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id* at 126.  The

3  court held that when the confession of a defendant implicates his co-defendant, it is impossible to

4  expect a jury to "perform the overwhelming task" of "segregat[ing] evidence into separate intellectual

5  boxes." *Id.*  The court rejected the contention that limiting instructions would serve as "an adequate

6  substitution for [defendant's] constitutional right[s]" in joint trials of this nature. *Id* at 137.  Thus, the

7  court held that it would have been proper to sever the trial. *Id.* (holding that the purpose of Rule 14 was

8  to "provide a procedure whereby the issue of possible prejudice can be resolved on the motion for

9  severance.").

10            **b.        Redaction**

11           The court finds that although redaction may resolve any *Bruton* issue, it is premature to decide

12  the issue at this time. Before the court can decide the issue, the government must provide the court with

13  proposed redactions for the court to assess the language and context of the redacted statement to

14  determine whether it complies with *Bruton*. *See, e.g.*, *U.S. v. Solomon*, No. 2:05–cr–385, 2007 WL

15  1228029, at *6 (W.D. Pa. 2007 April 25, 2007) ("Without knowing what the statements are or without

16  seeing any proposed redaction, the Court finds that any severance determination based upon *Bruton*

17  issues would be premature at this time."); *U.S. v. Savage*, No. 07–cr–550, 2012 WL 6609425, at *12

18  (E.D. Pa. Dec. 19, 2012) (holding the same); *U.S. v. Gallo*, No. 98–cr–338, 1999 WL 9848, at *9

19  (S.D.N.Y. Jan. 11, 1999) (holding the same). The court also finds that it is premature to decide the issue

20  because the determination of which statements will be introduced at trail is a question that is best left

21  to the trail judge. *See, e.g.*, *U.S. v. Webb*, 827 F.Supp. 840, 842 (D. Mass.1993); *U.S. v. Barfield*, No.

22  6:10–cr–00279, 2011 WL 129633, at *2 (W.D. La. Jan. 14, 2011).

23            **c.        Antagonistic Defenses**

24           The Supreme Court has held that "mutually antagonistic defenses are not prejudicial *per se*."

25  *Zafiro,* 506 U.S. at 538. Mere antagonism between co-defendants is not enough; "a defendant must

26  show that the core of the co-defendant's defense is so irreconcilable with the core of his own defense

13

1    that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant."

2    *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996).   The finding of antagonistic

3    defenses provides the court with grounds to sever the trial of co-defendants.   *United States v. Tootick,*

4    952 F.2d 1078, 1082 (9th Cir. 1991).   "[M]ere inconsistency[, however,] in defense positions is

5    insufficient to find codefendants' defenses are antagonistic" or mutually exclusive.   *Id.*   It is when the

6    "acquittal of one codefendant would necessarily call for the conviction of the other," that the court will

7    sever the trials on this basis.   *Id.* (citing *United States v. Adler*, 879 F.2d 491, 497 (9th Cir. 1988)).

8         Defendant Williams has not demonstrated to the court that the defendants' defenses are

9    antagonistic,  that the acquittal of either of the defendants would "necessarily call for the conviction of

10   the other," or that Gentle's defense is so irreconcilable with the core of his own defense that

11   "acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *United*

12   *States v. Throckmorton*,  87 F.3d 1069, 1072 (9th Cir. 1996); *see Tootick,* 952 F.2d at 1082.  Defendant

13   Williams has also not stated what his defense to the allegations against him are.   Any concern that

14   Gentle's testimony would implement Williams will be cured by the redaction discussed above.

15        Accordingly, and for good cause shown,

16        IT IS ORDERED that defendant Frederick Vernon Williams' Motion for Severance of Counts

17   and Defendants (#89) is DENIED without prejudice.

18                              **RECOMMENDATION**

19        Based on the foregoing, it is the recommendation of the undersigned United States Magistrate

20   Judge that defendant Williams' Motion to Suppress Search Warrant (#92) should be DENIED.

21        DATED this 25th day of September, 2013.

22                                            _____

23                                            CAM FERENBACH
                                            UNITED STATES MAGISTRATE JUDGE

24

25

26

14