# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:12–cr–0463–JCM–VCF |
| vs. | **REPORT & RECOMMENDATION** |
| FREDERICK V. WILLIAMS, *et al.*, | |
| Defendants. | |

Before the court is Defendant Frederick Williams' Motion to Suppress Involuntary Statements (#91[1]). The Government filed an Opposition (#99).

On September 3, 2013, the court held a hearing on Williams' motion (#116). During the hearing, the court ordered the parties to file supplemental briefs, which were submitted on September 13, 2013. (#117, #118).

## BACKGROUND

This matter involves Defendants Frederick Williams, Jacqueline Gentle, and Deon Gentle's alleged schemes to fraudulently secure United States passports, unemployment benefits, and Nevada identification cards. (*See* Indictment (#1) at 1–3). On December 12, 2012, Williams was arrested in the early morning hours and subsequently interviewed by Special Agents Conlin and Roland. (Gov't's Opp'n (#99) at 2: 8–9). During the interview, Williams allegedly waived his *Miranda* rights and confessed to the charges outlined in the Government's Indictment. (*Id.*)

---

[1] Parenthetical citations refer to the court's docket entry number.

1

On June 24, 2013, Williams brought the instant motion to suppress. Williams argues that his confession was the product of unlawful government coercion. (Def.'s Mot. to Suppress (#91) at 2:17–23). According to Williams—who lived with his elderly and disabled mother, wife, and three young children—Special Agent Roland told Williams that if he did not confess to the charges, his wife and mother would be arrested and his children would be taken placed under state supervision. (*Id*.)

On September 3, 2013, the court held a hearing on Williams' motion. (Mins. Proceedings (#116)). Special Agent Conlin testified to Williams' demeanor during the interview. (*Id*.) Conlin reported that Williams was calm, articulate, and did not appear to feel threatened. (*Id*.) On cross-examination, however, Conlin testified that: (1) Roland, not Conlin, interviewed Williams; (2) Conlin was not present for the entirety of Williams' interview; and (3) Roland was unavailable to testify because he is currently stationed in Iraq. (*Id*.)

Williams subsequently took the stand. (*Id*.) According to Williams, while Conlin was out of the room, Roland threatened to arrest Williams' mother and wife unless Williams confessed. (*Id*.) Williams repeatedly and emphatically stated that he felt that he had no choice and that his only option was to protect his family and, therefore, confess to the Government's charges. (*Id*.) Indeed, Williams testified to feeling overborne and overpowered. (*Id*.)

Oral argument followed. The Government attempted to impeach Williams' testimony by asserting that the record contains numerous undisputed instances of Williams lying. (*Id*.) In response, the Defense argued that, regardless of Williams' credibility, the government failed to satisfy its burden of demonstrating that Williams' confession was free and voluntary. (*Id*.) The Government, then, conceded that the parties were at "equipoise," but for Williams' lack of credibility. (*Id*.)

**LEGAL STANDARD**

The Fifth Amendment's due process clause prohibits the use of involuntary confessions at trial. *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). Involuntary confessions are suppressed from

criminal prosecutions because they are "inherently untrustworthy" and offend society's "deep-rooted feeling that the police must obey the law while enforcing the law." *Spano v. New York*, 360 U.S. 315, 320–21 (1959). Indeed, the U.S. Supreme Court has long directed courts to "indulge every reasonable presumption against waiver of fundamental constitutional rights." *See United States v. Page*, 302 F.2d 81, 84 (9th Cir. 1962) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also Hodges v. Easton*, 106 U.S. 408, 412 (1882) ("every reasonable presumption should be indulged against" waiver of a fundamental right).

Although there is no "talismanic definition of voluntariness" that is "mechanically applicable," *see Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973)), the pivotal question is whether the defendant's will was overborne. *Id*. at 225–226. Psychological coercion, as much as physical force, may render a confession involuntary. *See Schenckloth*, 412 U.S. at 226–27. Courts have repeatedly addressed the admissibility of confessions extracted through threats and promises relating to a suspect's family members. *See, e.g.*, *Haynes v. Washington*, 373 U.S. 503, 514 (1963) (holding that a written confession was involuntary because the police obtained it through the threat of "continued incommunicado" with the suspect's family). While it is permissible for police to merely explain to the defendant what may happen to his or her family if the defendant does not confess, *see, e.g.*, *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993), it is impermissible for the police to "deliberately prey upon" the defendant's familial ties. *United States v. Tingle*, 658 F.2d 1332, 1336 (9th Cir. 1981). The government bears the burden of demonstrating that a confession is voluntary by a preponderance of the evidence. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

**DISCUSSION**

Resolving Williams' motion is, ultimately, a question of which party bears the burden of persuasion. During the court's September 3, 2013 hearing, two witnesses testified. (*See* Mins.

Proceedings (#116)). The Government's witness, Special Agent Conlin, testified that Williams' confession was free and voluntary; but, Conlin also conceded that he was not present for the entirety of Williams' interview. (*Id.*) The Defense asserted, therefore, that Conlin's testimony is incomplete and unreliable. (*Id.*) By contrast, the Defenses' witness, Williams, testified that his confession was involuntary and coerced; but, Williams also conceded that he has lied on previous occasions. (*Id.*) The Government asserted, therefore, that Williams' testimony is incredulous. (*Id.*)

Williams' motion to suppress is granted. Because the parties proffered conflicting and equally questionable testimony, the court cannot find that the government has demonstrated, by a preponderance of the evidence, that Williams' confession was voluntary. *See Haswood*, 350 F.3d at 1027. Indeed, during oral argument, the Government stated that parties are at "equipoise," but for Williams' lack of credibility. (Mins. Proceedings (#116)). Preponderance of the evidence, by definition, requires something more than mere equipoise. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) ("**preponderance of the evidence.** (18c) The greater weight of the evidence"). The Government's burden was to provide "clear and positive" testimony to support a finding that Williams voluntarily waived his Fifth Amendment rights. *See Page*, 302 F.2d at 84.

The court's conclusion that the Government failed to carry its burden is bolstered by the U.S. Supreme Court's long-standing directive that courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *See Hodges*, 106 U.S. at 412. Williams' assertion that he felt that he had no choice but to confess and protect his family, coupled with Special Agent Conlin's admission that he was not present for the entirety of the interview, provides ample grounds to reasonably presume that Williams' waiver was involuntary.

The Government attempts to overcome this presumption by (1) impeaching Williams' testimony, asserting that Williams is a confessed and habitual liar, and (2) arguing that "[t]here is no evidence to corroborate the defendant." (*See* Mins. Proceedings (#116)); (Gov't's Supp. Brief (#118) at 2:10–11,

3:7) ("The government contends that the defendant's testimony on September 3, 2013, is simply not credible given the totality of the circumstances"). Even if the court accepted the Government's arguments as true, which it does not,[2] the Government cannot satisfy its burden of providing "clear and positive" testimony of voluntariness by discrediting Williams' testimony or relying on the absence of corroborating evidence. *See Page* 302 F.2d at 84 ("There must be clear and positive testimony. [ . . . ] Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. The government's burden is greater where consent is claimed to have been given while the defendant is under arrest").

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Defendant Frederick Williams' Motion to Suppress (#91) be GRANTED.

DATED this 24th day of September, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[2] Even if the court disregarded Williams' testimony in its entirety, Special Agent Conlin's testimony does not create a preponderance of the evidence of voluntariness. Conlin's admissions that (1) Williams was under arrest and (2) Conlin, himself, was absent during the entirety of Williams' interview, require the court to presume that Williams' wavier was invalid. *See Hodges*, 106 U.S. at 412 ("every reasonable presumption" should be "indulged against" waiver of a fundamental right); *see also Page*, 302 F.2d at 84 ("Coercion is implicit in situations where consent is obtained under color of the badge"). When this presumption is balanced against Conlin's testimony that Williams' appeared calm and unthreatened for the limited time that Conlin was with Williams, the court is again presented with an equipoise.