**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:12–cr–0463–JCM–VCF |
| vs. | |
| | **ORDER** |
| FREDERICK VERNON WILLIAMS, *et al.*, | |
| Defendants. | |

Before the court is Defendant Frederick Vernon Williams' motion to substitute counsel (#126[1]). Williams' attorney, Brenda Weksler, Assistant Federal Public Defender filed a response (#130). Williams did not file a reply.

Also before the court is Williams' unopposed motion to extend the deadline to file objections (#131) to this court's September 25, 2013 report and recommendation.

**BACKGROUND**

This matter involves Defendant Frederick Vernon Williams' alleged schemes to fraudulently secure United States passports, unemployment benefits, and Nevada identification cards. (*See* Indictment (#1) at 1–3). During his December 13, 2012 initial appearance, Williams, who is an indigent alien, pled not guilty to the Government's charges, was appointed counsel, and was released on a personal recognizance bond. (Mins. Proceedings #18); (Order Appt. Counsel #12). On January 25,

---

[1] Pathetical citations refer to the court's docket.

1

2013, the court revoked Williams' pretrial release conditions and ordered Williams to be detained pending trial. (Mins. Proceeding #37); (*see also* Mins. Proceeding #41).

To date, Williams' counsel, Assistant Federal Public Defender Brenda Weksler, has litigated various pretrial motions on Williams' behalf. (*See, e.g.*, #81, #89, #91, #92). These include a motion regarding Williams' pretrial release and a motion to suppress, which the court granted in Williams' favor. (*See* Report & Rec. (#121) at 5).

On October 9, 2013, Williams filed the instant motion to dismiss Ms. Weksler as his attorney "because of irreconcilable differences." (Mot. to Dismiss (#126) at 1). On November 5, 2013, the court held a hearing on Williams' motion. (*See* Mins. Proceedings #138). At the hearing, Williams identified four "irreconcilable differences," which primarily regarded legal arguments that Williams wanted Ms. Weksler to make in various pretrial motions. (*Id.*)[2] Williams repeatedly stated that he is "at the mercy" of counsel and is not free to direct his defense as he chooses because he is represented. (*Id.*)

After Williams presented his argument, the court temporarily adjourned in order to give Williams and Ms. Weksler an opportunity to confer. (*Id.*) Following Williams and Ms. Weksler's meeting, Williams reiterated his desire to dismiss Ms. Weksler as his attorney for the sole reason that she would not file a motion to re-open bail and fashion conditions of release for Williams. (*Id.*)

## LEGAL STANDARD

The aim of the Sixth Amendment "is not to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Sixth Amendment guarantees ***effective assistance of counsel***, not a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). A disagreement between a criminal defendant and counsel, therefore, is generally insufficient to warrant a substitution of counsel.

---

[2] As discussed during the court's hearing, the specifics of Williams' complaints remain under seal.

Nonetheless, certain disagreements require the court to substitute defendant's appointed counsel. If the defendant and counsel experience an "irreconcilable conflict," then the court may violate the defendant's Sixth Amendment right to effective assistance of counsel by not substituting counsel. *United States v. Moore*, 159 F.3d 1154, 1159–60 (9th Cir. 1998). The rationale behind this rule is that requiring a defendant to be represented by counsel with whom the defendant has an irreconcilable conflict is tantamount to denying the defendant's right of counsel in its entirety. *Id.*; *see also Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970) (refusal to substitute new counsel violated the Sixth Amendment where relationship between defendant and particular public defender had completely collapsed).

To determine whether a conflict rises to the level of "irreconcilable," a court looks to three factors: (1) the extent of the conflict; (2) the adequacy of the inquiry by the trial court; and (3) the timeliness of the motion for substitution of counsel. *Moore*, 159 F.3d at 1158-59. A trial court's inquiry regarding counsel's performance on a motion to substitute counsel should be "such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern." *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991) (citation omitted). It also should provide a "sufficient basis for reaching an informed decision" regarding whether to appoint new counsel. *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986).

## DISCUSSION

Because Williams' timely[3] moves the court to substitute his counsel and, as discussed below, the court denies Williams' motion, the court is at risk of violating Williams' Sixth Amendment right to effective assistance of counsel. *Moore*, 159 F.3d 1154, 1159–60. In order to avoid violating Williams' Sixth Amendment right, this court must: (1) discuss the extent of the conflict and (2) attempt to

---

[3] Trial is over a month away; and the parties have stipulated to a continuance. The court, therefore, finds that Williams' motion is timely and does not cause "inconvenience and delay." *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991).

3

"alleviate the defendant's dissatisfaction [with counsel] and provide a basis for [the defendant to] reach an informed decision about the need for new counsel." *Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007).

## I.    The Extent of Williams' Conflict

The extent of the conflict between Williams and Ms. Weksler is, most likely, irreconcilable. During the court's November 5, 2013 hearing, Williams stated that the essence of the conflict is that he wants an attorney that will re-open bail fabricate conditions for Williams' pretrial release. (*See* Mins. Proceeding #138); (*see also* Mot. to Re-Open Bail (#127) at 2–3) (prepared and filed by Williams). Ms. Weksler refused to file the a motion because she believes that the motion is meritless. The court agrees.

Under Williams' circumstances, it is unlikely that any diligent attorney would file the motion Williams' requests. On December 13, 2012, Williams was released on a personal recognizance bond. (*See* Mins. Proceedings #18). However, on January 25, 2013, the court revoked Williams' pretrial release conditions and ordered Williams to be detained pending trial. (Mins. Proceeding #37); (*see also* Mins. Proceeding #41). Now, Williams seeks to substitute counsel in order to file a motion that no diligent attorney would file and, thereby, litigate questions that have already been decided.

The court, therefore, finds that extent of the conflict between Williams and Ms. Weksler is, most likely, irreconcilable. Williams' motion to substitute counsel, however, is denied. Because no diligent attorney would satisfy Williams' demands. As discussed during the November 5, 2013 hearing, Williams may file a new motion to substitute counsel or invoke his right to self-representation. Before doing so, however, the court is required to attempt to alleviate Williams' dissatisfaction with counsel and provide Williams with a basis for determining whether he should, in fact, dismiss Ms. Weksler. *Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007).

## II.     Alleviating Williams' Dissatisfaction with Counsel

The third factor that the court must consider when resolving Williams' motion to substitute counsel is "the adequacy of the court's inquiry into the defendant's complaint." *Stenson*, 504 F.3d at 887. The purpose of this inquiry is to "alleviate the defendant's dissatisfaction and provide a basis for reaching an informed decision." *Id*. As discussed in more detail below, the court attempts to alleviate Williams' concerns by making three points: (1) Ms. Weksler is an excellent attorney; (2) motions to suppress confessions are rarely granted; and (3) the essence of Williams' argument, which he presented during the court's November 5, 2013 hearing, is contradictory.

### A.     *Ms. Weksler is an Excellent Attorney*

The court begins its attempt to alleviating Williams' concerns by commending Ms. Weksler's representation of Williams. As noted during the court's November 5, 2013 hearing, attorneys are in a constant state of apparent conflict. Attorneys are, on the one hand, required to zealously represent their clients and, on the other hand, act as officers of the court. *See, e.g.*, ABA MODEL RULES OF PROF'L CONDUCT Preamble (2004). Acting as an officer of the court means that an attorney should only file motions and make arguments that are merited. This obligation may lead clients to mistakenly conclude that their attorney's duty to act as an officer of the court undermines the attorney's duty to zealously represent her client. Williams appears to have made this mistaken conclusion.[4]

The court attempts to alleviate Williams' dissatisfaction with counsel by emphasizing that it is a dangerous mistake to assume that Ms. Weksler's refusal to make certain arguments or file specific motions impedes Williams' zealous defense. If Ms. Weksler prioritized her duty to represent Williams

---

[4] During the court's November 5, 2013 hearing, Williams repeatedly stated that he is "at the mercy" of counsel because he is not free to direct his attorney to make specific arguments or file specific motions. (*See* Mins. Proceedings #138).

above her duty to act as an officer of the court, Ms. Weksler would risk making frivolous arguments that would damage her credibility and, potentially, comprise Williams' defense.

Ms. Weksler, however, has dutifully refrained from making meritless arguments and filing frivolous motions. In so doing, Ms. Weksler has gained credibility with the court, which has made her a more effective advocate. The purpose of these remarks is not to praise Ms. Weksler but to inform Williams. The court understands that Williams wants an advocate that will make every argument and file every motion that has any chance of ending what has probably been a terrible eleven months. The court, nonetheless, must provide Williams with the following warning: Getting what you want now—(*i.e.*, an attorney who will do as you say and file a motion to re-open bail)—will come at the cost of getting what really matters (*i.e.*, an effective advocate and a legitimate defense).

### B.  *Motions to Suppress Confessions are Rarely Granted*

In addition emphasizing that Ms. Weksler is a credible advocate, the court also emphasizes that Ms. Weksler is also an effective advocate. On September 25, 2013, the court granted a motion to suppress that was prepared and litigated by Ms. Weksler. (*See* Report & Rec. (#121) at 5). The court realizes that Williams is unfamiliar with federal criminal procedure. The court, therefore, emphasizes that it is a rare thing for a defendant to win a motion to suppress. According to "[a]n in-depth examination of nine jurisdictions," motions to suppress "identifications or confessions were granted only five percent of the time." NEUBAUER & MEINHOLD, JUDICIAL PROCESS: LAW, COURTS, AND POLITICS IN THE UNITED STATES 241 (6th ed. 2013). In this case, Ms. Weksler suppressed Williams' confession. (*See* Report & Rec. (#121) at 5). This does not happen 95% of the time.

### C.  *Williams' Argument is Contradictory*

The Sixth Amendment guarantees criminal defendants, like Williams, the right to self-representation. *Faretta v. California*, 422 U.S. 806, 835 (1975). Before Williams invokes this right,

above her duty to act as an officer of the court, Ms. Weksler would risk making frivolous arguments that would damage her credibility and, potentially, comprise Williams' defense.

Ms. Weksler, however, has dutifully refrained from making meritless arguments and filing frivolous motions. In so doing, Ms. Weksler has gained credibility with the court, which has made her a more effective advocate. The purpose of these remarks is not to praise Ms. Weksler but to inform Williams. The court understands that Williams wants an advocate that will make every argument and file every motion that has any chance of ending what has probably been a terrible eleven months. The court, nonetheless, must provide Williams with the following warning: Getting what you want now—(*i.e.*, an attorney who will do as you say and file a motion to re-open bail)—will come at the cost of getting what really matters (*i.e.*, an effective advocate and a legitimate defense).

### B.  *Motions to Suppress Confessions are Rarely Granted*

In addition emphasizing that Ms. Weksler is a credible advocate, the court also emphasizes that Ms. Weksler is also an effective advocate. On September 25, 2013, the court granted a motion to suppress that was prepared and litigated by Ms. Weksler. (*See* Report & Rec. (#121) at 5). The court realizes that Williams is unfamiliar with federal criminal procedure. The court, therefore, emphasizes that it is a rare thing for a defendant to win a motion to suppress. According to "[a]n in-depth examination of nine jurisdictions," motions to suppress "identifications or confessions were granted only five percent of the time." NEUBAUER & MEINHOLD, JUDICIAL PROCESS: LAW, COURTS, AND POLITICS IN THE UNITED STATES 241 (6th ed. 2013). In this case, Ms. Weksler suppressed Williams' confession. (*See* Report & Rec. (#121) at 5). This does not happen 95% of the time.

### C.  *Williams' Argument is Contradictory*

The Sixth Amendment guarantees criminal defendants, like Williams, the right to self-representation. *Faretta v. California*, 422 U.S. 806, 835 (1975). Before Williams invokes this right,

however, he should consider what it will mean. Williams is incarcerated. He is not an attorney. Prisons have limited recourses. And yet, the basis for Williams' motion to substitute counsel and invoke his right to self-representation is that he does not have enough resources. (*See* Mins. Proceedings #138). During the court's November 5, 2013 hearing, Williams complained that his attorney refused to file a motion to re-open bail or hire an immigration attorney and private investigator in order to prove that the Government is lying. (*Id*.) It is well-settled that *pro se* litigants—which Williams may soon become— lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244–45 (3d Cir. 2013) (citing *Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983)). If Williams wants to dismiss Ms. Weksler because she does not have enough resources, Williams should take a hard look at his current situation and consider whether Williams, acting alone, has more resources in prison than Ms. Weksler has out of prison.

In closing, the court offers Williams two pieces of advice. *See Stenson*, 504 F.3d at 887 (requiring the court to attempt to alleviate Williams' concerns). First, focus not on what Ms. Weksler has refused to do but on what Ms. Weksler has already accomplished. Second, consider transferring your effort and intelligence from working against Ms. Weksler to working with her. Because no criminal defendant has unlimited resources, the best that any criminal defendant can do is to protect the resources that they already have. The choice to renew your motion to substitute counsel or invoke your right to self-representation is your own. The court merely asks that you to pause and reflect on the long-term consequences of whatever decision you make.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Williams' motion to substitute counsel (#126) is DENIED. After further reflection, Williams may renew his motion to substitute counsel or invoke his Sixth Amendment right to self-representation.

7

IT IS FURTHER ORDERED that Williams' motion to substitute counsel or invoke his Sixth Amendment right to self-representation must be filed with the court by November 12, 2013. The Government's response must be filed with the court by November 19, 2013.

IT IS FURTHER ORDERED that the parties stipulation for continuance (#131) is GRANTED. The parties have until December 3, 2013 to file objections to the courts recent Reports and Recommendations (#121, #122).

IT IS SO ORDERED.

DATED this 6th day of November, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE