1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7

8 UNITED STATES OF AMERICA,                )
                                           )
9                     Plaintiff,           )          Case No. 2:12-cr-00463-JCM-VCF
                                           )
10 vs.                                     )          **ORDER**
                                           )
11 FREDERICK VERNON WILLIAMS, *et al.*,    )
                                           )
12                    Defendants.          )
   _____)

13

14          This matter is before the Court on Defendant Frederick Vernon Williams' Motion to Re-

15 Open Bail (#171), filed on November 27, 2013.[1]  The Government filed its Response to

16 Defendant's Motion to Re-Open Bail (#205) on February 18, 2014.  The Court conducted a hearing

17 in this matter on February 20, 2014.

18                          **BACKGROUND AND DISCUSSION**

19          Defendant Frederick Vernon Williams was initially charged in an indictment filed on

20 December 11, 2012 with making a false statement in a passport, making a false citizenship claim,

21 and aggravated identity theft.  *Indictment (#1)*.  The indictment alleged that Mr. Williams, a citizen

22 of Belize, falsely portrayed himself as the son of a deceased United States citizen to obtain a U.S.

23 passport and claim United States citizenship.  The Government alleges that Defendant's true father

24 is a citizen and resident of Belize.  Defendant made his initial appearance on the indictment in this

25 Court on December 13, 2012.  Following Defendant's arraignment, the Government moved for his

26 detention as a substantial risk of non-appearance.

27 . . .

28
   _____
          [1] Pursuant to Order (#201), the Court reinstated Defendant's motion to re-open bail on February 7,
   2014.

Pretrial Services reported to the Court that Defendant stated he was born in Belize in 1980 and had resided there until he moved to Las Vegas, Nevada approximately 12 years ago.  Defendant stated that he became a U.S. citizen in 2003.  Pretrial Services reported, however, that Immigration and Customs Enforcement (ICE) had lodged a detainer against the Defendant on the grounds that he is a citizen of Belize and was illegally present in the United States.  Defendant informed Pretrial Services that he has a United States passport and had traveled to Belize in 2012 to visit family.  He also stated that he had made several other trips to Belize in the last five years to visit family.  Defendant stated that he resided in North Las Vegas with his mother who is disabled and confined to a wheelchair.  Pretrial Services further reported that Defendant had been unemployed for the past month.  He had previously been employed by Clark County, Nevada as a juvenile detention assistant and prior to that as a family services specialist for the State of Nevada.  Defendant stated that he owned three automobiles with a combined value of $17,000.00.  He stated that he receives $1,000 per month in food stamps and $956.00 in disability benefits for his mother.  Defendant informed Pretrial Services that his health was good and that he had never used any illegal controlled substances and had not consumed alcoholic beverages in the past three years.

Pretrial Services reported that between November 2001 and November 2011, Defendant was charged with various motor vehicle-traffic related offenses, as well as alien smuggling in 2003, battery/domestic violence in 2004 and 2007, a bad check charge in 2006, and forgery, burglary and attempted theft in November 2011.  Defendant was also arrested a total of five times for failures to appear in court in 2003, 2004, and 2008.  Defendant's only reported conviction, however was for attempted theft and he was awaiting sentencing on that charge at the time of his initial appearance before this Court.

Pretrial Services recommended that Defendant be detained pending trial as a risk of nonappearance.  The undersigned Magistrate Judge ordered, however, that Defendant Williams be released on a personal recognizance bond subject to the following conditions: (1) Pretrial Services supervision, (2) maintain or actively seek employment, (3) surrender any passport or other travel documents to Pretrial Services, (4) not obtain a new passport or other travel documents, (5) travel restricted to Clark County, Nevada, (6) avoid contact with alleged victims or potential witnesses in

the subject prosecution, (7) maintain current residence and notify Pretrial Services prior to any change, and (8) restricted to residence and electronic monitoring. *Defendant's Appearance Bond (#26).* Upon Defendant's release from federal custody in this case, he was taken into ICE custody.

On January 23, 2013, the Government, on behalf of Pretrial Services, filed a Petition for Action on Conditions of Pretrial Release (#32). The petition alleged that Defendant appeared before an Immigration Judge on January 16, 2013 and stated that he wished to be "voluntarily deported" to his country of birth, Belize.[2] Pretrial Services recommended that Defendant's pretrial release be revoked based on his apparent attempt to be allowed to depart the United States and return to Belize. Following Defendant's arrest on the petition, he was detained pending a revocation hearing on February 20, 2013. *Minutes of Proceedings (#37).*

During the revocation hearing, the Government's counsel stated that he had obtained a compact disc recording of Defendant's appearance before the Immigration Judge on January 16, 2013, copy of which had also been provided Defendant's counsel. The Government's counsel stated that Defendant informed the Immigration Judge that he was a citizen of Belize and requested that he be allowed to voluntarily return to Belize. The Defendant reportedly told the Immigration Judge that he desired to be released so that he could care for his ill mother and that he intended to take her with him to Belize. Counsel for the Government represented that the Immigration Judge denied Defendant's request for voluntary departure because of the pending federal and state criminal charges against him. At a subsequent hearing on January 24, 2013, the Immigration Judge ordered that Defendant be removed from the United States to Belize, based on a finding that he was illegally present in the United States. According to the order of removal, Defendant waived his right to appeal the removal order.[3]

---

[2] The Court interprets this as a request for voluntary departure.

[3] A copy of the Removal Order is included in Exhibit 1 to the Government's Response to Defendant's Motion to Re-Open Bail (#205). The Government has also attached as exhibits, a copy of the Immigration Judge's February 13, 2013 Decision and Order which indicates that Defendant Williams filed a motion to reopen the removal proceeding on the basis that he would present evidence that his biological father is a United States citizen. The Immigration Judge denied that motion.

In further support of the revocation of Defendant's pretrial release, the Government's counsel asserted that in May 2004, the Defendant submitted an application for a Nevada driver's license in which he represented that he was born in St. Croix, United States Virgin Islands.  The Government also asserted that sometime prior to August 6, 2012, Defendant's brother submitted a claim for the payment of life insurance proceeds on an insured named Frederick Williams who had reportedly died in Canada, or another foreign country.  The insurer sent a letter to Defendant William's brother and to Defendant's spouse requesting further information relating to the insured's reported demise.  Counsel for the Government concluded his argument by asserting that Defendant Williams is a "fraudster" who will say anything and that he could not be trusted to comply with the pretrial release conditions.

Defendant, through his counsel, consented to detention without admitting any of the charges in the petition.  Because Defendant did not contest the revocation of his pretrial release, the Court did not receive or listen to the recording of the January 16, 2013 hearing before the Immigration Judge.  The Court revoked Defendant's pretrial release and ordered that he be detained pending trial.

A superseding indictment was filed on April 16, 2013 which contained an additional count of false citizenship claim against Defendant Williams based on an alleged notary application that he made in 2009.  The superseding indictment also charged Defendant Williams and Defendant Jacqueline Louisa Gentle with conspiracy to commit mail fraud, and charged Defendant Williams with thirteen counts of mail fraud involving allegedly fraudulent claims for state unemployment insurance benefits.  *Superseding Indictment (#47)*, Counts 8, 9, 10-23.  A second superseding indictment was filed on November 12, 2013 which added a count against Defendant Williams and others for theft of government property relating to the alleged fraudulent obtaining of unemployment benefits in the approximate amount of $218,000.  *Second Superceding Indictment (#142).*

On May 23, 2013, Defendant Williams, through counsel, filed his first Motion to Re-Open Bail (#81).  Defendant asserted that he did not contest the revocation of his pretrial release on February 20, 2012 because it appeared that he would remain in either immigration custody or

federal custody.  Given the advantages of federal custody, Defendant chose not to contest the revocation of his pretrial release.  Defendant stated, however, that one of his family members was now willing to post bail in the Immigration Court so that he could be released from the custody of that court.  Defendant also represented that he had surrendered his passport and had no viable way of leaving the United States.  Defendant therefore requested that the Court reconsider its order revoking his pretrial release.  The Government opposed reconsideration of the order revoking Defendant's pretrial release.  *Government's Opposition (#82).*  The Court conducted a hearing on June 24, 2013 and denied Defendant's motion to re-open bail.  *Minutes of Proceedings (#90).*

Defendant was subsequently permitted to represent himself in this action, with the Federal Public Defender acting as standby counsel.  *Minutes of Proceedings (#173).*  The Defendant thereupon filed the instant second motion to re-open bail.  At the February 20, 2014 hearing in this matter, Defendant Williams argued passionately that he has no intention of leaving the United States and that he intends to proceed to trial in this case and aggressively defend the charges against him.  A significant part of the hearing involved Defendant Williams's and Government counsel's conflicting arguments as to what Williams told the Immigration Judge on January 16, 2013.  As discussed above, the Government's counsel represented that Defendant told the Immigration Judge that he was a citizen of Belize and requested that he be permitted to voluntarily depart the United States so that he could be released from ICE custody to care for his ill mother.  Defendant also allegedly stated that he intended to take his mother with him to Belize.  Defendant Williams argued on February 20, 2014 that he knew at the time of the hearing before the Immigration Judge that if he was granted voluntary departure, he would still have to remain in the United States to face the federal and state criminal charges against him, and that he made clear to the Immigration Judge that he had no intention of leaving the United States prior to the resolution of those charges.  Defendant also argued that this Court can reimpose conditions of pretrial release to assure that he is not deported from the United States pursuant to the Immigration Court's removal order until the criminal proceedings are resolved.

During the February 20, 2014 hearing, the Court inquired if a transcript of the January 16, 2013 Immigration Court hearing is available.  The Court was informed that no transcript is

5

available.  Defendant's standby counsel stated, however, that a transcript of the hearing could be obtained and she would provide it to the Court.  The Court therefore took Defendant's motion under submission pending review of the Immigration Court hearing transcript.   The Court's courtroom deputy clerk was subsequently advised by Defendant's standby counsel that it would be difficult to obtain a transcript of the hearing for at least several weeks.  The Court requested that the deputy clerk advise the Defendant's standby counsel that the Court is willing to listen to the recording of the January 16, 2013 Immigration Court hearing.

On February 26, 2014, Defendant Williams filed an emergency ex-parte motion for a ruling on his motion to reopen bail.  *See Ex Parte Motion (#209)*.  Defendant argues that "[t]he government's proffer amounts to a request for judicial review of [the Immigration Court] proceedings for which their exist no statutory of constitutional provision vested upon this court-for such a motion brought by the government.  Nonetheless, nothing in the colloquy between me and the Immigration Judge during my proceeding in his court on 01/16/13 and 01/24/13 will support the government's rhetoric that I am a flight risk." *Emergency Ex-Parte Motion (#209), pg. 2.* Defendant argues that because the Immigration Judge ordered that he be released from custody under a $10,000 bond on January 24, 2013, the Immigration Judge must have concluded that Defendant did not pose a substantial risk of flight and there is no basis for this Court to have independently considered Defendant's alleged statements to the Immigration Judge in revoking his pretrial release.  In support of his position, Defendant cites *United States v. Castro-Inzunza*, No. 12-30205, Dkt. 9 (Order) 2012 U.S.App. LEXIS 26746 (9th Cir. July 23, 2012).

## DISCUSSION

18 U.S.C. § 3142(f)(2)(B) states that the detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Courts have interpreted this provision strictly, holding that a detention hearing should not be reopened if the information was available at the time of the initial hearing. *United States v. Ward*,

63 F.Supp.2d 1203, 1206-07 (C.D.Cal. 1999); *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); and *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989). *See also United States v. Wittenmyer*, 2001 WL 96840, *3 (D.Kan. 2001).

      In this case, the Court initially granted Defendant pretrial release, notwithstanding the Government's motion for detention and Pretrial Services's recommendation that he be detained as a risk of non-appearance.  The Government thereafter moved to revoke Defendant's pretrial release based on the request for voluntary departure that he made before the Immigration Court on January 16, 2013 and the statements he allegedly made regarding his intention to take his mother with him to Belize.  The Government also based its argument for revocation on Defendant's conflicting statements regarding his alleged citizenship, as well as his other alleged conduct which the Government argued demonstrates that he is untruthful and untrustworthy, and would not abide by conditions of release.  While  not admitting the Government's assertions, Defendant did not contest them and conceded to revocation of his pretrial release on February 20, 2013.  Defendant's first motion to re-open bail also did not contest the Government's arguments at the revocation hearing, but simply requested that he be released from federal custody now that he could allegedly make bail in the Immigration Court.

      Defendant's arguments in support of his second motion to reopen bail do not raise any information that could not have been presented during the revocation hearing on February 20, 2013. Defendant has therefore not met his burden under § 3142(f)(2)(B) to re-open the detention hearing. Notwithstanding this, the Court was willing to read the transcript or listen to recording of the January 16, 2013 hearing before the Immigration Judge to determine which party's version of that hearing is correct or more accurate.  The Defendant, however, demands that the Court grant his motion to re-open the detention hearing and reinstate his pretrial release without reviewing the Immigration Court hearing record.

      In *United States v. Castro-Inzunza*, 2012 WL 6622075, *1 (C.A.9 (Or.)), the Ninth Circuit reversed a district court's detention order.  (The district court's order is set forth at, 2012 WL 1952652 (D.Or. 2012)).  The defendant was charged with being a deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326.  The magistrate judge concluded that

7

defendant was not a flight risk, "apart from his ICE detainer, and that factor alone was insufficient to prevent his pretrial release." 2012 WL 1952652, at *2.  The district judge concluded, however, that because of a reinstated immigration removal order against the defendant, there were no conditions that the court could impose to reasonably assure his future appearance.  The district judge therefore ordered that the defendant be detained.  In reversing the district judge's order, the Ninth circuit stated:

> The government has failed to meet its burden to show that the removal period of 8 U.S.C. § 1231(a)(1)(A) will begin while defendant is "in custody" on pretrial release, subject to restraints not shared by the public generally that significantly confine and restrain his freedom. *See* 8 U.S.C. § 1231(a)(1)(B); *cf. Hensley v. Mun. Ct.,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Indeed, the government has not shown that defendant's trial, currently set for August 14, 2012, cannot be completed prior to the expiration of the removal period of 8 U.S.C. § 1231(a)(1)(A).

> The government also has failed to meet its burden to show that the district court may not assure defendant's appearance at trial by, for example, requiring the surrender of his passport and any other travel documents; enjoining him from obtaining or using any new travel documents; or enjoining the government from interfering with his ability to appear at trial. Additionally, the government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departure control order if it believes that his removal before trial would be contrary to public interest.

*Castro-Inzunza*, 2012 WL 6622075, at *1.

In *United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167, 1175 (D.Or. 2012), a magistrate judge also found that the defendant, who was charged with illegal re-entry of deported alien under 8 U.S.C. § 1326, did not pose a risk of non-appearance and ordered that he be released subject to pretrial services supervision.  The government did not appeal that decision to the district court. ICE, however, took the defendant into custody pending his removal from the United States pursuant to a reinstated removal order.  The defendant then filed a motion for an order to show cause why ICE should not be found in contempt of court.  The court partly granted defendant's motion by giving the Executive Branch one week from the date of the court's order to either return defendant to the District of Oregon and release him subject to the conditions of pretrial release imposed by the magistrate judge, or the court would dismiss the criminal charges against Defendant.  In so holding, the court further clarified or explained the Ninth Circuit decision in

8

*Castro-Inzunza* that a defendant who is granted pretrial release is still "in custody" for purposes of executing a removal order under 8 U.S.C. § 1231(a)(1)(A):

> In addition, a person who has been released subject to conditions of pretrial supervision is still "confined" because they are subject to restraints not shared by the public generally that significantly confine or restrain their freedom. *Cf. Hensley v. Mun. Ct.*, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (holding that a person is in "custody" for purposes of the habeas corpus statute when the person is subject to restraints "not shared by the public generally"); *see also United States v. Castro-Inzunza*, No. 12-30205, Dkt. 9, 2012 WL 6622075 (Order) (9th Cir. July 23, 2012) (citing *Hensley* in support of the same proposition in the context of the INA).

The court, thus, held the 90-day removal period under 8 U.S.C. § 1231(a)(1)(B) does not begin to run with respect to an alien who is on pretrial release, and it is not necessary for a court to detain a defendant subject to a removal order to assure his future appearance in court.

The Court, in this case, did not revoke Defendant William's pretrial release because the Immigration Judge had entered an order for his removal. Rather, the Court revoked Defendant's pre-trial release based on the Government's representation that Defendant had informed the Immigration Judge on January 16, 2013 that he was a citizen of Belize, that he requested to be allowed to voluntarily depart the United States and that he intended to take his mother with him to Belize. The revocation order was also based on the Government's argument that Plaintiff had made conflicting statements about his citizenship, and Defendant could not be relied on to comply with conditions of release based on his alleged use of false information to claim U.S. citizenship and to obtain a U.S. passport, as well as other information indicating that Defendant has engaged in fraudulent conduct involving false identities. The Court would further note that although it initially granted Defendant pretrial release, his criminal history record indicates five arrests for failure to appear which is a factor weighing against pretrial release.

The Court finds nothing in *United States v. Castro-Inzunza*, 2012 WL 6622075, *1 (C.A.9 (Or.)) that would preclude the district court from considering statements made by a defendant during an Immigration Court hearing that are relevant to a decision whether the defendant should be granted pre-trial release or detained, or, in this case, whether the detention hearing before this court should be re-opened. The fact that the Immigration Judge entered an order that Defendant

9

1  could be released from custody upon posting a $10,000 bail is also a factor that the district court

2  could consider in deciding whether the detention hearing in this case should be reopened.

3  **CONCLUSION**

4        Because the Defendant's requests or demands that the Court decide his motion to re-open

5  the bail hearing without reviewing the transcript or recording of the January 16, 2013 Immigration

6  Court hearing, the Court finds that Defendant has failed to submit new information that would

7  reasonably justify reopening the detention hearing or reconsidering the order revoking his pretrial

8  release.  The Court, however, remains willing to review the January 16, 2013 immigration hearing

9  recording for purposes of determining whether, in fact, Defendant's statements during that hearing

10  were accurately reported to the Court by Government's counsel during the February 20, 2013

11  revocation hearing, and, if not, whether on that basis the Court should re-open the bail hearing and

12  again grant Defendant pretrial release.  Accordingly,

13        **IT IS HEREBY ORDERED** that Motion to Re-Open Bail (#171) is **denied**, without

14  prejudice.

15        **IT IS FURTHER ORDERED** that Defendant's Emergency Ex-Parte Motion For Ruling

16  on Defendant Frederick Vernon Williams Motion to Reopen Bail (#209) is granted, to the extent

17  that this Court rules on his motion to reopen bail and denies it in accordance with the foregoing

18  provisions of this order.

19        DATED this 3rd day of March, 2014.

20

21  _____

22  GEORGE FOLEY, JR.
   United States Magistrate Judge

23

24

25

26

27

28